IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| BARRY NEAL COOPER, ET AL. | § | |
| Vs. | § | CIVIL ACTION NO. 6:07CV211 |
| UPSHUR COUNTY CONSTABLE'S OFFICE, ET AL. | § | |

ORDER ON MOTIONS FOR SUMMARY JUDGMENT

The above-styled lawsuit was filed on May 10, 2007. The matter was transferred to the undersigned with the consent of the parties. Defendants Upshur County Constable's Office, Upshur County, TX, Upshur County Sheriff's Department and Anthony Betterton filed a Motion for Summary Judgment (document #52). Defendants Russell Harris, Gary Roberts, Dale Tillery, Josh Martin and J.B. Griswold also filed a Motion for Summary Judgment (document #53). Plaintiffs filed a responses on April 4, 2008 and reply briefs were filed on April 15, 2008. For the reasons assigned below, the undersigned finds that the Motions for Summary Judgment should be granted.

*Background*

Plaintiffs Barry Neal Cooper and Candice Joy Johnston filed this lawsuit seeking relief individually and as next friend to Kelsie Paige Cooper, Kenzie Leah Cooper and Zachary Brandon Johnston. The complaint concerns an Order for Issuance of Writ of Attachment that was entered in a case styled, *In the Interest of Kelsie Cooper and Kenzie Cooper*, Minor Children, Cause No. 356-

03, in the 115th Judicial District Court in Upshur County, Texas, and the writ's subsequent execution. According to the complaint, the writ of attachment stemmed from an allegation by Tammy Gray that her ex-husband, Plaintiff Barry Cooper, did not comply with a visitation order. The writ directed that Kelsie and Kenzie Cooper be taken from the possession of Mr. Cooper and be delivered into the possession of Ms. Gray. Plaintiffs allege that their constitutional rights were violated because the writ was wrongfully entered and executed.

Plaintiffs filed this case against the Upshur County Constable's Office, Constable Russell Harris, Upshur County, Upshur County Sheriff's Department, Sheriff Anthony Betterton, Lieutenant Gary Roberts, Sgt. Dale Tillery, Deputy Josh Martin, Deputy J.B. Griswold, Judge Lauren Parish, Todd Tefteller, Gaston Deberry, Timon Gray and Tammy Gray. On August 15, 2007, the claims against Judge Lauren Parish were dismissed with prejudice. Likewise, the claims against Gaston W. Deberry, Timon Gray, Tammy Joyce Gray and Todd Tefteller were dismissed with prejudice on August 20, 2007. Plaintiffs' remaining claims concern the execution of the writ of attachment.

On February 15, 2008, Defendants Upshur County Constable's Office, Upshur County, Upshur County Sheriff's Department and Sheriff Anthony Betterton filed a Motion for Summary Judgment (document #52). Defendants assert that the Upshur County Constable's Office and the Upshur County Sheriff's Department are not entities subject to suit; that Upshur County did not fail to train its deputies and all deputies met and exceeded minimum TCLEOSE requirements; that Sheriff Betterton did not engage in any wrongful conduct, was not deliberately indifferent to Plaintiffs' constitutional needs and did not fail to supervise his deputies; and that Sheriff Betterton is entitled to qualified immunity.

On the same date, Defendants Russell Harris, Gary Roberts, Dale Tillery, Josh Martin and

J.B. Griswold filed a Motion for Summary Judgment (document #53).  These Defendants assert that they had consent to enter Plaintiffs' home; that Constable Harris had a valid writ of attachment to secure possession of Kelsie and Kenzie Cooper resulting in quasi-judicial immunity for Defendants with regard to claims concerning securing the children; that Defendants Harris and Griswold used minimal, reasonable force; that Defendant Gary Roberts had no involvement in the incident and no claim has been stated against him; that there is no evidence that Defendant Dale Tillery failed to supervise his employees or that he exhibited deliberate indifference; and that each individual Defendant is entitled to qualified immunity.

The facts asserted by Defendants in their motions for summary judgment are that Constable Harris received the writ of attachment and contacted Deputies Griswold and Martin to help serve it. When they arrived at the residence, the officers spoke to Candi Cooper, formerly known as Candice Johnston and wife of Mr. Cooper, informed her of the writ and told her they needed to return Kelsie and Kenzie Cooper to their mother, Ms. Gray.  Mrs. Cooper allegedly allowed them into the home and the children prepared to leave with them.  At some point, Mrs. Cooper called her husband, Mr. Cooper.  Defendants allege that Mr. Cooper told Kelsie and Kenzie Cooper to fight and resist law enforcement officers.  Defendants additionally allege that Mr. Cooper threatened law enforcement officers.  Defendants contend that Kelsie Cooper became resistant after talking to her father and fought with the officers that attempted to escort her to their car.  Kelsie was allegedly combative and defiant, which included kicking, screaming and yelling.  According to Defendants, Ms. Gray decided that it would be better to stop trying to get the children to leave to avoid physical force being used by the officers.  The officers then left the scene.

Plaintiffs view the facts somewhat differently.  In their responses to the motions for summary

judgment (docket [#62](#62) and [#63](#63)) , Plaintiffs deny that Mrs. Cooper gave Harris permission to enter the residence. Mr. Cooper denies telling his daughter to resist officers and that he threatened a police officer. He asserts that the children did not want to go with their mother and that officers picked up Kelsie and dragged her to the patrol car. Plaintiffs assert that the struggle left bruises on Kelsie arm. Plaintiffs additionally take issue with the fact that Harris was involved in the execution of the writ. Mr. Cooper submits that he was previously involved in a fist fight with Harris and that Harris should not have participated in execution of the writ. Mr. Cooper further submits that Tillery, as the supervisor, should not have allowed Harris to serve the writ and failed in his duty to supervise the incident.

Defendants filed reply briefs on April 15, 2008 (docket [#65](#65) and [#66](#66)). Defendants object to Plaintiffs' summary judgment exhibit #2 – an affidavit of Candi Cooper, exhibit #3 – an affidavit of Kelsie Cooper, exhibit #4 – an affidavit of Barry Cooper, and exhibit #9 – an affidavit of Kenzie Cooper, asserting that the affidavits are not based on personal knowledge, are not sworn statements and do not show affirmatively that the affiant is competent to testify to the matters stated therein. Defendants further object to Plaintiffs' asserted disputed material facts that are based on those affidavits. In response to the objections to their exhibits, Plaintiff submitted amended exhibits on April 21, 2008 and April 29, 2008 that include notarized affidavits asserting that each affiant is competent to testify as to the matters asserted therein and that they are based on personal knowledge.

Plaintiffs and Defendants both submitted a DVD of a dashboard camera recording of the events that took place at Plaintiffs' home on December 9, 2005. The audio on the recording is not clear and does not identify who is speaking at any given time. The only activity of Defendants that is seen on the video is the officers knocking on the door and entering the home. The officers walked

into the home after the door was opened by Mrs. Cooper and after the officers notified her that they were there to take the children to their mother pursuant to a writ. There is no evidence on the video of the officers using any force to enter the home. Towards the end of the video, Ms. Gray can be seen trying to get one of her daughters into a car and then talking to her daughter. The video does not show any of the defendants with either of the children.

*Summary Judgment Standard*

Rule 56(c) of the FED. R. CIV. P. provides that the Court may only grant a motion for summary judgment when there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. The party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553 (1986). The moving party, however, "need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant's burden is only to point out the absence of evidence supporting the nonmoving party's case. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996). Once, the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. *Id.* Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the nonmovant's burden. *Id.*

Summary judgment is inappropriate if the evidence before the court, viewed as a whole, could lead to different factual findings and conclusions. *Honore v. Douglas*, 833 F.2d 565 (5th Cir.

1987). The district court must look to the full record, including the pleadings, affidavits, and depositions. *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). Under this standard, fact questions are considered with deference to the nonmovant. *Reid v. State Farm Mutual Automobile Insurance Co.,* 784 F.2d 577, 578 (5th Cir.1986). The evidence of the nonmovant is to be believed and all inferences are to be drawn in his favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 (1986). The Court resolves factual controversies for purposes of summary judgment in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *Little v. Liquid Air Corp.*, 37 F.3d at 1075. The Court does not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. *Wallace v. Texas Tech University*, 80 F.3d 1042, 1048 (5th Cir. 1996) (citing *Little v. Liquid Air Corp*, 37 F.3d at 1075).

An issue is "genuine" if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inference in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of the party. *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987). A "material fact" is one that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510.

*Discussion and Analysis*

In this case, Plaintiffs seek relief pursuant to 42 U.S.C. § 1983. To state a claim pursuant to § 1983, Plaintiffs must show the deprivation of a constitutional right. Section 1983 states that every person who acts under color of state law to deprive another of constitutional rights shall be liable to the injured party. Section 1983 suits may, for example, be used to sue a state employee using or abusing power that is possessed by virtue of state law to violate a person's constitutional rights. *See*

*Monroe v. Pape*, 365 U.S. 167, 184 (1961); *accord*, *Brown v. Miller*, 631 F.2d 408, 410-11 (5th Cir. 1980). In this Circuit, before a plaintiff may maintain a civil rights suit, he must show an abuse of governmental power that rises to a constitutional level. *Love v. King*, 784 F.2d 708, 712 (5th Cir. 1986); *Williams v. Kelley*, 624 F.2d 695, 697 (5th Cir. 1980), *cert. denied*, 451 U.S. 1019 (1981). A civil rights plaintiff must allege a deprivation of a federally protected right in order to set forth a *prima facie* case. *Maine v. Thiboutot*, 448 U.S. 1 (1980); *Williams v. Treen*, 671 F.2d 892, 900 (5th Cir. 1982).

Summary Judgment Evidence

Defendants have objected to Plaintiffs' affidavits that were attached to their responses to the motions for summary judgment. Pursuant to Fed.R.Civ.P. 56(e), an affidavit submitted to support a response to a motion for summary judgment must, "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Unsworn letters, even if signed, are not competent summary judgment evidence. *Watts v. Kroger Co.*, 170 F.3d 505 (5th Cir.1999).

After Defendants filed their objections to Plaintiffs' affidavits, Plaintiffs submitted amended affidavits that are sworn and notarized. The amended affidavits further assert each affiant's competence to testify on the matters and personal knowledge. To the extent that the affidavits contain specific facts that would be admissible in evidence, Defendants objections are overruled. The Court will not consider inadmissible statements, such as hearsay statements and conclusory averments. *See Salas v. Carpenter*, 980 F.2d 299 (5th Cir.1992).

Constable's Office and Sheriff's Department

Plaintiffs name the Upshur County Constable's Office, Precinct 1, and the Upshur County

Sheriff's Department as defendants in this lawsuit. The capacity of a governmental entity to sue or be sued in federal court is determined by state law. *See* Fed.R.Civ.P. 17(b). As a result, for example, "[a]lthough a municipal corporation and the individual members of its city council may have capacity to sue and be sued, the council itself may not be a legal entity for purposes of Rule 17(b)." Wright, Miller, & Kane, 6A *Federal Practice and Procedure*: Civil 2d § 1562, p. 454 (West Publishing, 2d ed. 1990). Under Texas law, a city or county can designate whether its departments or subdivisions can sue or be sued. See, e.g., *Darby v. Pasadena Police Department*, 939 F.2d 311, 313 (5th Cir.1991) ("A Texas city is allowed to designate whether one of its own subdivisions can be sued as an independent entity."). A plaintiff cannot sue a city or county department or subdivision unless it enjoys separate legal existence. *Id.*

In this case, Plaintiffs have not alleged facts showing that the Upshur County Constable's Office or the Upshur County Sheriff's Department has been established as a separate legal entity with the capacity to sue and be sued. The claims against the Upshur County Constable's Office, Precinct 1, and the Upshur County Sheriff's should accordingly be dismissed.

<u>County and Supervisory Liability</u>

Plaintiffs name Upshur County and Sheriff Betterton as defendants. In their complaint, Plaintiffs allege that the county and Sheriff Betterton are "responsible for the injuries by not providing the necessary training and supervision" and because they "failed to punish the police misconduct."

Municipalities and supervisors cannot be sued under § 1983 on a theory of vicarious liability for the actions of their employees; rather, an official policy must have caused the employee to violate another's constitutional rights. *Monell v. Department of Social Services,* 436 U.S. 658, 691, 98 S.Ct.

2018, 2036 (1978). In *Bennett v. City of Slidell,* 735 F.2d 861, 862 (5th Cir.1984)(en banc), the Fifth Circuit set forth the framework for determining municipal liability under § 1983:

> A municipality is liable under § 1983 for a deprivation of rights protected by the Constitution or federal laws that is inflicted pursuant to official policy.
>
> Official policy is:
>
> > 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
> >
> > 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.
>
> Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

Plaintiffs do not point to an official policy of Upshur County that resulted in a violation of their constitutional rights. In addition, Plaintiffs have not shown an unconstitutional action by Sheriff Betterton, a municipal policymaker. See *Johnson v. Deep East Texas Regional Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir.2004). To the extent Plaintiffs may be asserting that the county and Sheriff were negligent, it is noted that a showing of negligence is not sufficient to establish § 1983 liability. *Id.*

Plaintiffs assert a conclusory allegation in the complaint that the county and Sheriff failed to train and supervise law enforcement officers. A county policy of failing to train its officers may state a § 1983 claim, but a plaintiff must show a causal link between the failure to train and a constitutional violation. *Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir.2000) (*cert. denied*, 532

U.S. 1007, 121 S.Ct. 1734 (2001)).  Additionally, a plaintiff must show that the failure to train amounts to deliberate indifference, meaning there must be proof that a municipal actor – in this case, Sheriff Betterton – disregarded a known or obvious consequence of his actions.  *Estate of Davis v. City of North Richland Hills*, 406 F.3d 375 (5th Cir.2005); *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382 (1997).  "To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is 'obvious and obviously likely to result in a constitutional violation.' " *Id.* at 381 (*quoting Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir.2001)).  Generally, a single incident is insufficient to demonstrate deliberate indifference.  *See, e.g., Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir.2003).

In this case, Plaintiffs have not articulated the training that is allegedly lacking or shown a causal link between insufficient training and a constitutional violation.  Moreover, Plaintiffs have not produced evidence to establish that Sheriff Betterton acted with deliberate indifference.  There has been no showing of a pattern of violations or an obvious inadequacy in training that would clearly lead to a constitutional violation.  Defendants, on the other hand, have produced summary judgment evidence showing the Texas Commission on Law Enforcement Officer Standards and Education ("TCLEOSE") education and training received by its deputies meet or exceed the minimum requirements.  Conclusory assertions, unsupported by concrete and particular facts, are insufficient to defeat a motion for summary judgment.  *Marshall on Behalf of Marshall v. East Carroll Parish Hosp. Service*, 134 F.3d 319, 324 (5th Cir.1998).  The claims against Upshur County and Sheriff Betterton should be dismissed.

Plaintiffs additionally name Sgt. Tillery as a defendant.  Tillery did not participate in the

execution of the writ. By Plaintiffs' own account, Tillery arrived "after the excessive use of force on Kelsie and Kenzie was finished."[1] Plaintiffs complain in their response to the motion for summary judgment that Tillery failed to supervise the officers. In order to successfully plead a cause of action in a civil rights case, a plaintiff must enunciate a set of facts that illustrate a defendant's participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). As stated above, under 42 U.S.C. § 1983, supervisory officials are not liable for subordinates' actions on any vicarious liability theory. A supervisor may only be held liable if either of the following exists: (1) he is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987). Plaintiffs have not alleged facts showing that Tillery was personally involved in a constitutional deprivation. In addition, they have not shown a causal connection between any of his conduct and an alleged constitutional violation. The claims against Sgt. Tillery should, therefore, also be dismissed.

Presumably, Plaintiffs are also suing Lt. Gary Roberts because of his position as a supervisor. There is no evidence that Gary Roberts participated in the execution of the writ or took any other actions related to this case. As previously stated, to state a cause of action pursuant to § 1983, a plaintiff must show that a defendant was personally involved in a constitutional violation or that his acts are causally connected to the alleged constitutional violation. *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir.1995). There is no evidence that Lt. Roberts had any contact with Plaintiffs or that he participated in any way in a constitutional violation.

---

[1] See Plaintiffs' Response to Motions for Summary Judgment, p. 5.

Officer Executing Writ of Attachment

The three remaining defendants – Constable Harris, Deputy Griswold and Deputy Martin – assert the affirmative defense of qualified immunity. Qualified immunity is intended to shield government officials from liability for monetary damages for acts in the performance of discretionary functions that were objectively reasonable in light of clearly established law. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 2738 (1982); *Thompson v. Upshur County,* 245 F.3d 447, 456 (5th Cir.2001). The first step is to determine whether Plaintiffs' constitutional rights were violated. *Estep v. Dallas County, Texas*, 310 F.3d 353, 363 (5th Cir.2002) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001)). "If the facts viewed in the light most favorable to the plaintiff do not show a constitutional violation, the officer is entitled to qualified immunity." *Id.* Next, the court must consider whether the right was clearly established at the time of the alleged violation. *Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692 (1999). If it is determined that there was a violation of a clearly established constitutional right, the third inquiry is whether the official's conduct was objectively reasonable. *Kipps v. Caillier*, 197 F.3d 765, 768 (5th Cir.1999), *cert. denied*, 531 U.S. 816, 121 S.Ct. 52 (2000).

Plaintiffs allege in this case that Defendants violated their Fourth Amendment rights by "unreasonably searching Barry's residence and unreasonably arresting the children."[2] The Fourth Amendment protects people from unreasonable searches and seizures within their homes. *United States v. Richard*, 994 F.2d 244, 247 (5th Cir.1993). To violate the Fourth Amendment, an officer's actions must intrude upon a reasonable expectation of privacy in a significant way. *See U.S. v. York,* 895 F.2d 1026, 1028 (5th Cir.1990). In an earlier case, the Fifth Circuit discussed the definition of

---

[2]*See* Plaintiffs' Complaint, p. 7.

the term "search" when it stated:

> A search occurs when the government infringes "an expectation of privacy that society is prepared to consider reasonable" . . . Not all invasions of privacy or interferences with liberty or property, then, are searches or seizures. Before the infringement can be labeled either "search" or "seizure," in the sense in which those words are used in the fourth amendment, the government action *must be unreasonable or constitute a meaningful interference*. These criteria are implied from the very use of the terms, "search" and "seizure." In addition, by its express text, the amendment prohibits only those searches and seizures that are unreasonable in the particular circumstances in which they are performed.

*National Treasury Employees Union v. Von Raab*, 816 F.2d 170, 175 (5th Cir.1987), *aff'd in part, vacated in part and remanded*, 489 U.S. 656, 109 S.Ct. 1384 (1989)(quoting *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656 (1984)(emphasis in original). In *York*, the Fifth Circuit established a two-part analysis. First, a court must consider whether the complained-of activity intrudes upon a reasonable expectation of privacy in such a significant way to make the activity a "search." *U.S. v. York*, 895 F.2d at 1028. Next, if it is determined that a "search" occurred, a court must determine whether the governmental intrusion was unreasonable given the particular facts of the case. *Id.*

The summary judgment evidence shows that Harris, Griswold and Martin arrived at the Cooper residence with a facially valid writ of attachment.[3] The writ commanded officers to "take the body of the minor children, Kelsie Cooper . . . and . . . Kenzie Cooper . . . from the possession of the said Respondent, Barry Neal Cooper, or from any other person having possession of the children when the children [are] found, and to thereafter deliver the children safely into the possession of . . . . Tammy Gray." Law enforcement officers executing such a writ are entitled to

---

[3]As stated previously, all claims asserted by Plaintiffs challenging the writ have been dismissed.

absolute immunity.  *Mays v. Sudderth*, 97 F.3d 107, 113 (5th Cir.1996).  Absolute immunity from suit is afforded to judges acting pursuant to their jurisdiction; not extending that immunity to the law enforcement officers charged with executing a facially valid court order would place the law enforcement officer in the untenable position of choosing between disobeying a court order or facing a suit for damages.  *Id*.  "An official acting within the scope of his authority is absolutely immune from a suit for damages to the extent that the cause of action arises from his compliance with a facially valid judicial order issued by a court acting within its jurisdiction."  *Id.*

The officers' entry into the home and seizure of the children arise from their compliance with the writ of execution.  In a previous order, this Court found that the issuing judge, Judge Parish, was absolutely immune from suit.  That same immunity applies to the law enforcement officers executing the writ of attachment.  Harris, Griswold and Martin are entitled to absolute immunity from Plaintiffs' Fourth Amendment unreasonable search and seizure claims.

The only remaining claim is Plaintiffs' allegation that the officers used excessive force when seizing Kelsie Cooper.  Kelsie Cooper allegedly had marks on her left arm after the incident that later turned into bruises.  The Fourth Amendment reasonableness standard applies with respect to a seizure or arrest of a person.  *Tennessee v. Garner*, 471 U.S. 1 (1985); *Graham v. Connor*, 490 U.S. 386 (1989)*.  The Supreme Court has held that a court must determine "whether the totality of the circumstances justified [that] particular sort of search or seizure."  *Garner*, 471 U.S. at 8-9.  The balancing test "requires careful attention to the facts and circumstances of each particular case."  *Graham*, 490 U.S. at 396.  "The "reasonableness" must be judged from the perspective of a reasonable officer on the scene, rather than the 20/20 vision of hindsight.'"  *Id.*  "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make

split-second judgments - circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." *Id.* at 396-97. In applying these standards, the Fifth Circuit has held that a plaintiff must show that he was seized and that he "suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Flores v. City of Palacios,* 381 F.3d 391, 396 (5th Cir. 2004) (citations omitted).

In this case, Plaintiffs have not shown that force "excessive to the need" was used. By Plaintiffs own account of the events, Kelsie Cooper would not leave voluntarily with the officers and was not compliant. She held onto a barstool that she was sitting on and two of the officers picked her up. Whether Kelsie Cooper wanted to go with the officers or not is not at issue. The officers were executing a facially valid writ of attachment commanding them to take Kelsie Cooper to her mother. Plaintiffs' own recitation of the facts recounts a teenage child resisting the officers' efforts to take her to the car. The force that Plaintiffs allege occurred included grabbing her by her arms, picking her up and "dragging" her to the car because she had her feet out in front her to try and stop them. Taking these facts as true, Plaintiffs have not established a genuine issue of material fact regarding whether the force used was excessive to the need or objectively unreasonable.

Moreover, Plaintiffs have not shown more than a *de minimus* injury. A showing of some type of injury, more than *de minimus*, is necessary to assert an excessive use of force claim for damages. *Williams v. Bramer,* 180 F.3d 699, 703 (5th Cir.1999). The amount of injury necessary to rise above a *de minimus* injury is directly tied to the amount of force that is constitutionally permissible under the circumstances. *Ikerd v. Blair,* 101 F.3d 430, 434 (5th Cir.1996). The analysis is tailored so that a cause of action will not be permitted for every contact between a citizen and a police officer:

> In just about every conceivable situation, some amount of force or contact would be too nominal to constitute a constitutional violation. When the force used is insufficient to satisfy the legal standard necessary for recovery, the amount of force is *de minimus* for constitutional purposes.

*Id.* Plaintiffs have not shown a use of force rising to the level of a constitutional violation. Accordingly, Harris, Griswold and Martin are entitled to qualified immunity as to Plaintiffs' excessive use of force claim.

For the reasons assigned above, the undersigned finds that there are no genuine issues of material fact and that Defendants are entitled to judgment as a matter of law. Defendants' Motions for Summary Judgment should be granted. It is accordingly

**ORDERED** that Defendants Upshur County Constable's Office, Upshur County, TX, Upshur County Sheriff's Department and Anthony Betterton's Motion for Summary Judgment (document #52) and Defendants Russell Harris, Gary Roberts, Dale Tillery, Josh Martin and J.B. Griswold's Motion for Summary Judgment (document #53) are **GRANTED**. The complaint is **DISMISSED** with prejudice. It is further

**ORDERED** that the Pretrial Conference scheduled for June 2, 2008 and the Jury Trial scheduled for June 3, 2008 are **CANCELED**. Any motion not previously ruled on is **DENIED**.

So **ORDERED** and **SIGNED** this **12** day of **May, 2008.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE